(July 16, 1968)

■ In the Matter of JANNIE L. GLANTON, Respondent, v. CHILDREN'S AID SOCIETY, INC., Appellant.— Order and judgment of the Family Court, dated May 6, 1968, terminating placement of three children with appellant and discharging them to their maternal grandmother, reversed, on the law and the facts and in the exercise of discretion, without costs or disbursements, and the application is denied. We do not feel that it would serve the best interests of the children to permit the change. Twin girls, born January 30, 1964, and a younger boy, born April 5, 1965, have been with foster parents for the past two years and have an extremely warm home which offers the children love and security, and they have made an excellent adjustment. The foster father is gainfully employed in a private commercial enterprise; the foster mother resigned from a position as psychiatric hospital aide in order to care for the children, who regard their foster parents as their father and mother. The twin girls have their own separate bedroom, as does the boy, in a home apparently owned by the foster parents. In addition, the children have a playground and yard. The girls are enrolled in a school commencing September, 1968. The children are progressing admirably with the foster parents. Their religious instruction has commenced. The mother, Nina Walton, 28 years old, visits the children infrequently. The record shows that on July 1, 1965, when the children were placed in the custody of the Children's Aid Society, the children had been adjudged to be neglected. The record further shows that the mother's home was dirty, foul-smelling, garbage-strewn, bedding dirty and vermin-infested, and there was no food in the house. The father of the twins is apparently a different man than the father of the boy. The Family Court Justice found the mother to be completely incompetent and incapable of providing care. In addition, the record shows she is amoral. A diagnosis in her case indicates a finding at Bellevue Hospital of paranoid schizophrenia. The mother apparently has been subsisting on public welfare since 1963. The grandmother is 48 years old. She owns her own house in Clio, Alabama, which consists of three bedrooms, a kitchen, a dining room and a living room. She has seven children in her care, three of them being children of her daughter Nina. Her income consists of a take-home salary of $35 a week plus $128 a month from public assistance and some $55 a month from an adult son who lives in Chicago. The grandmother works as a domestic in a military establishment at Fort Rucker, Alabama, five days a week. She leaves home at 5:45 A.M. and returns at 3:30 P.M. She apparently prepares breakfast for the children before leaving for work, and all of the children except the youngest attend school. The youngest is left with a neighbor, to whom she pays $5 a week. The grandmother had a stroke in 1963. The place of her employment is some 25 miles from her home, and it is difficult to see, even with the best of intensions, how she can take care of three more children, making a total of 10. In fact, the grandmother admits when the three children would not be in school they would be cared for by a baby sitter who is paid one dollar a day. The Family Court found as a fact that the grandmother was able to take care of the three additional children. In our opinion there was insufficient investigation concerning the conditions in the grandmother's home at Clio, Alabama. The court, in changing custody, stated that the mother's wishes should be considered. While that is true generally, in the circumstances of this case it is difficult to see how the wishes of the mother in the instant case should bear much weight. In any event the mother's disposition must give way to considerations of the best welfare of the children, which is our paramount concern. We conclude it is in the best interests of the children to

continue their custody with the foster parents. Concur — Steuer, Rabin and McNally, JJ.; Botein, P. J., and Tilzer, J., dissent in the following memorandum by Tilzer, J.: Tilzer, J. (dissenting): I dissent and vote to affirm. A dispositional order in a neglect proceeding is the most serious and far-reaching exercise of authority vested in judges of the Family Court. The entire future of young and entirely blameless children is determined by such orders. In the instant proceeding, though faced with a Solomon's choice, the order committing the infants to the custody of their grandmother serves the best interests of the children and is supported by sufficient competent and material evidence. In her long experience on the Family Court bench, the court below observed, she had rarely seen a steadier or more remarkable person than this maternal grandmother. The psychiatrist appointed by the court reported that the grandmother would be an excellent guardian of the three infants and he recommended that they be entrusted to her care. Finally, the Law Guardian assigned to represent the children is satisfied that the determination is supported by the evidence and that it serves the children's best interests in the long run.